McKinney, J.,
delivered the opinion of the Court:
This case presents a novel state of facts. The declaration is in trover, for the supposed conversion of a slave named Henry, alleged to be the property of Wheatley, as administrator, de bonis non of the estate of one Simmons. Verdict and judgment were for the *490 plaintiff for $351.10, and the defendant, Cheek, appealed in error.
It appears from the proof, that one B. F. Brocket and the plaintiff’s intestate, Hugh J. Simmons, were owners of the slave in controversy. They had owned a grist-mill jointly in the city of Memphis, which they sold to the defendant Cheek, and received from him in part consideration of the sale, the slave in question.
Simmons died, and one Collingsworth, it seems, was appointed administrator of his estate. The slave Henry, remained to be divided equally between Brocket and the estate of Simmons. And for the purpose of division, Brocket, as surviving owner, and Collingsworth, as administrator, of the deceased, assuming that under the circumstances, they had the right to do so, joined in a sale of the slave to Cheek, for the sum of five hundred dollars; one-half of which sum was paid to Brocket, and the remaining half to Collingsworth.
The record shows that there were no debts due from the joint concern of Brocket & Simmons, at the death of the latter. Shortly after receiving the moiety of the proceeds of the sale of said slave, Collingsworth died. But as to what disposition he made of said sum of money, whether he disbursed any of it in due course of administration, or appropriated the same to his own use, there is no intimation in the record. Soon after his death, a second administration was granted on the estate of Simmons, to the plaintiff, Wheatley. This latter administration is, by its terms, general; though, in legal effect, it is limited, and is but an administration de bonis non. Assuming the sale of the slave by the first administrator to be a nullity, and that a *491 moiety of the interest in said slave still remained in the estate of Simmons, Wheatley, in his representative character, brought this action to recover the same.
There is no proof of a demand of the slave before the institution of the suit. It is conceded, however, that Cheek, by virtue of his bill of sale from Brocket and Collingsworth, claims to be vested with the entire and absolute title to the slave, and holds him in opposition to the right of the estate of the deceased, and all other persons.
Upon this statement of the facts of the case, it is clear that the slave was held by Brocket and Simmons, not as partners, but as tenants in common. The • community of interest between them in respect to the mill, of whatever nature it may have been, was dissolved and at an end by the sale of the mill.
The legal effect of the sale of the slave is then to be considered! with reference to the power of the administrator, as well as of the surviving co-tenant, to make the sale, and the interest vested in Cheek by such sale.
That the sale, as regards the moiety attempted to be conveyed by Collingsworth, is a nullity, admits of no question. Since the act of 1827, an administrator has no more right to dispose of a moiety than of the entirety of a slave. This proposition is too clear to require any discussion.
Next as regards the power of the surviving part-owner to sell. It is to be observed that the relation of part-owner is different from that of partners. In virtue of the community of rights and interests between partners, each partner may sell or dispose of, *492 not merely his own share, but the entirety of any personal property belonging to the firm, for purposes within the scope of the partnership. He has the right to do so as to his own share as owner; and in respect to the share of his co-partner, he has authority to do so as agent and representative of the firm:. But not so as to part-owners of a chattel. The latter are but tenants in common, and not joint tenants ; and neither has a disposing power over anything more than his own interest, and can sell only his own share of the property. This he may rightfully do, and the purchaser from him will become vested with a valid title to his share of the property, and be substituted in his stead as a tenant in common with the co-tenant. And upon the death of either, the personal representative of the deceased, in general, becomes tenant in common of the property with the surviving tenant.
It seems to be well settled, that the exclusive possession of a chattel, by one tenant in common, and his refusal to permit the other to participate in the use thereof, will not entitle the other to sue at law, because each has an equal right to the possession, and the possession of one is the possession of both. If the other cannot regain possession, his remedy is in equity, for a sale and division of the proceeds.
But upon the point — whether or not the absolute sale of the entire chattel by one of several partners, is of itself sufficient evidence of a conversion to subject him to an action of trover, at the suit of his co-tenant, there is considerable difference of judicial opinion. Our predecessors adopted the doctrine, in Rains vs. McNairy, 4 Humph. R., 356, that a sale *493 by one tenant in common, of the entirety of the chattel, is such a conversion as will entitle the other to maintain trover. And, without enquiring on which side the weight of authority lies, we are disposed to adhere to that decision.
There can be no doubt in the case under consideration, but the sale by Brocket was operative to vest Cheek with a valid title to a moiety of the slave and this is the extent of the interest acquired by his purchase. The other moiety still remains in the estate of Simmons. If trover had been brought against Brocket, the case should have turned upon the bona fides- of the transaction. If the latter fairly assumed to sell, and did in fact sell, nothing more than his own interest in the slave, it is clear that the action could not have been maintained. But, if by fraud and collusion, he procured Collingsworth to join him, for the purpose of effecting a sale of the entire property in the slave, then, it is equally clear, that he would have been liable in trover.
It cannot admit of a doubt, that Cheek, in purchasing from Collingsworth, the moiety of the slave belonging to the estate of Simmons, and asserting a claim in virtue thereof, to the entire ownership of the slave, was guilty of a conversion, and liable in trover.
And this brings us to the question, whether the action can be maintained by the present plaintiff.
It is argued that it cannot, because the title is in the distributees of the estate of Simmons, and not in the plaintiff. And in support of this proposition, is cited the case of Elliott vs. Cochran 2 Sneed, R. *494 468. Thié case does not sanction the deduction upon which the argument rests. While it is true, that, if a sale of slaves belonging to the estate of an intestate, be not required for the payment of debts, the title passes immediately to the distributee; yet it is no less true, that until the condition of the estate can be ascertained, and distribution made, it is the duty of the personal representative to protect the property of the estate, and the slaves as well as other property; and in this view he must be regarded as having such a temporary, qualified interest- in the slaves, in consequence of his liability, as will entitle him to maintain trover, at least against a wrongdoer having no title. We do not say that the action might not be well supported by the distributees, that question not necessarily arising in the case.
But upon a different ground, we think the plaintiff cannot maintain this action: and that is, that it is not the province of an administrator de bonis non. The rights and duties of an administrator de bonis non are limited and specific. He is to administer such assets of the estate as remain in specie at the death of the former administrator. To this extent merely, in the absence of statutory regulations — is he the representative of the estate. “ He can claim nothing but the goods of the intestate remaining in specie, unconverted and unchanged at the time of the death of the original administrator.”—See 4 Bac. Abr. (Bouvier’s Ed.) Title Executors and Administrators, letter B. and cases there cited. He is not responsible for the mal-administration or devastavit of his predecessor. He cannot inquire into or impeach the validity of his *495 acts. Nor can he do that which the former representative had precluded himself from doing, Though the administrations are distinct, yet there is such a privity of estate between them as that the latter administrator will, at law, be bound by the acts of the former.
If the former by parting with the interest in property, vested in him by law as personal representative of the estate, — whether such interest was special or general, and whether the alienation was rightful or wrongful, so as to be estopped from re-asserting a right to. recover the same; the administrator de bonis non,, will likewise be estopped, at law, to recover. This must necessarily result from the relation of the latter, standing as he does in the shoes of the former, to some extent, and taking up the administration at the point where it was left off by his predecessor. It might be conceded without affecting the force of the argument in the present case, that in equity, if the former administrator had by collusion disposed of goods of the estate for his own use, the latter might apply to have the fraudulent sale set aside. But how this may be, it is not necessary at present to enquire.
It is assumed in opposition to this reasoning, that because the sale by the former administrator, in the present case, was absolutely void, and the title still remained in the estate, that, therefore, the administrator de bonis non may sue. This conclusion, we think, is not tenable. True, as against the distributees and creditors, the title is unchanged, and no obstacle is thrown in their way by such wrongful sale. But this is nothing more than may, in general, be affirmed of any and all acts of devastavit, or fraudulent alien *496 ation by a former administrator; By such acts — ' though conclusive against the administrator de bonis non — the rights of distributees and others cannot, generally speaking, be prejudiced. But still, their rights can no more be asserted, or their wrongs redressed, in the one case, than in the other, through the medium of the administrator de bonis non.—10 Yerg. 434; 2 Sneed, 650.
The remedies in favor of the distributees, upon the facts in this record, are ample, both legal and equitable. But this is not the point in judgment.
The result is, that the judgment must be reversed and arrested.